UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NSA SAM,<br><br>                      Plaintiff,<br>     v.<br><br>CITY OF TACOMA, et al.,<br><br>                      Defendants. | CASE NO. C17-5024JLR<br><br>ORDER GRANTING SUMMARY JUDGMENT |

## I.    INTRODUCTION

Before the court is the City of Tacoma, Tacoma Police Officer Eric Scripps, and Tacoma Police Officers Does I-X's (collectively, "Defendants") motion for summary judgment. (MSJ (Dkt. # 21).) Specifically, Defendants rely on the stipulation and release agreement signed by Plaintiff Nsa Sam on December 17, 2014, as the basis for their motion. (*Id.* at 6-11.) The court has considered the motion, the relevant portions of the

//

//

record, and the applicable law. Being fully advised,[1] the court GRANTS Defendants' motion for summary judgment and DISMISSES this case with prejudice.

## II. BACKGROUND

In September 2013, Officer Scripps was a police patrol officer for the Tacoma Police Department ("TPD") and assigned to the Special Investigations Division. (Scripps Aff. (Dkt. # 23) ¶¶ 2-3.) At that time, Officer Scripps identified Ms. Sam as a suspect in a narcotics investigation. (*Id.* ¶¶ 4-6.) Officer Scripps worked with a confidential informant to conduct two controlled buys of illegal narcotics from Ms. Sam. (*Id.* ¶ 4; *id.* ¶ 13, Ex. 2 ("Incident Rep.") at 6.) The controlled buys involved Ms. Sam's vehicles: her 2007 Ford Mustang and her 2008 Dodge Charger. (*See id.* ¶ 4; Incident Rep. at 6.) On September 20, 2013, the Pierce County Superior Court granted Officer Scripps's request for a search warrant. (Incident Rep. at 7.)

On September 23, 2013, Officer Scripps and the TPD executed the search warrant for Ms. Sam's townhome, apartment, the 2007 Ford Mustang, and the 2008 Dodge Charger. (*See* Incident Rep. at 7-8.) During the search, the TPD seized $12,780.00 in cash, the 2007 Ford Mustang, prescription pills, other drugs and drug paraphernalia, and a firearm.[2] (*See id.*; Homan Aff. ¶ 4, Ex. 2 ("Sept. Not. of Seizure").) On September 25,

---

[1] No party requests oral argument (*see* MSJ at 1), and the court concludes that oral argument would not help its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided . . . without oral argument.").

[2] As a result of the investigation and search, Ms. Sam pleaded guilty to the charge of "Unlawful Possession of a Controlled Substance with Intent to Distribute." (*See* Homan Aff. ¶ 9, Ex. 7 ("Plea").)

ORDER - 2

2013, the TPD served Ms. Sam with a notice of seizure and intended forfeiture for the $12,780.00, and the 2007 Ford Mustang. (*See* Sept. Not. of Seizure.) During the initial search, however, Officer Scripps did not locate Ms. Sam's 2008 Dodge Charger. (Incident Rep. at 11.)

As a result of the first search, Officer Scripps applied for and obtained a seizure warrant for the Dodge Charger from the Pierce County Superior Court on September 25, 2013. (*See* Homan Aff. ¶ 5, Ex. 3 ("Dodge Seizure Warrant").) He provided the seizure warrant to South Sound 911, a separate agency that provides dispatch and records services to Pierce County agencies, in order for other law enforcement officers in the field to act upon the warrant. (Scripps Aff. ¶ 10.) On November 30, 2013, the City of Kent Police Department and various Kent police officers stopped Ms. Sam while she was driving the Dodge Charger. (Scripps Aff. ¶ 11; Incident Rep. at 16.) Kent Police Officer Robert Kellams and Kent Police Sergeant John Pagel secured the vehicle until Officer Scripps was available to take custody. (*See* Incident Rep. at 16.) Officer Scripps and the TPD subsequently took custody of the vehicle and sent Ms. Sam a notice of intended forfeiture. (*See* Homan Aff. ¶ 6, Ex. 4 ("Dec. Not. of Seizure").)

On December 2, 2013, the TPD commenced administrative forfeiture proceedings. (*See id.* ¶ 7, Ex. 5 ("Pet. for Removal") ¶ 1.) The City of Tacoma ("the City"), however, resolved the forfeiture matter with Ms. Sam in December 2014 pursuant to a stipulation and release. (Homan Aff. ¶ 8, Ex. 6 ("Release").) According to the terms of the release, the City returned $2,500.00 and the 2008 Dodge Charger, and in exchange, Ms. Sam forfeited the remaining $10,280.00 and the 2007 Ford Mustang. (*Id.*) Furthermore, Ms.

Sam agreed to release the City, the TPD, and its officers and employees "from any and all actions, claims or damages he or she may have in any way connected with or arising out of the City's seizure, storage, and return of said property, including but not limited to attorney's fees." (Release at 2-3.) Both Ms. Sam and her attorney signed the release. (*Id.* at 3.)

Ms. Sam filed the present action on November 30, 2016, in Pierce County Superior Court.[3] (Not. of Rem. (Dkt. # 1) ¶¶ 1-4; *see also* Compl. (Dkt. # 1-1).) On January 12, 2017, Defendants removed the action to federal court. (Not. of Rem. ¶¶ 1-4.) On March 1, 2017, Ms. Sam filed an amended complaint asserting four claims against Defendants: (1) a claim under 42 U.S.C. § 1983 for municipal liability against the City for failing to adequately train its police officers about "what constitutes probable cause to seize a vehicle" (*id.* ¶ 15); (2) a claim under 42 U.S.C. § 1983 against Officer Scripps for unreasonable seizure of the 2008 Dodge Charger in violation of the Fourth Amendment (*id.* ¶¶ 22-26); (3) a claim against the City under the theory of *respondeat superior* because Officer Scripps "was acting within the course and scope of his employment" (*id.* ¶¶ 27-28); and (4) a state law claim for false arrest and imprisonment arising from the November 30, 2013, stop by Kent Police Officers (*id.* ¶¶ 29-31).

//

---

[3] Ms. Sam also initiated a separate lawsuit against the Kent Police Department and three Kent Police Department Officers that was removed to federal court on June 2, 2016. *See Sam v. The City of Kent, et al.*, No. C16-0811JLR (W.D. Wash.). Ms. Sam alleged several causes of action under 42 U.S.C. § 1983 for the same November 2013 police stop at issue in the present case. *See id.*, Dkt. # 1-1 ("Compl.") ¶¶ 69-92. However, the parties settled that matter, and the court entered an order of dismissal in May 2017. *See id.*, Dkt. # 46 ("Order of Dismissal").

ORDER - 4

In this case, Ms. Sam was represented by counsel until February 12, 2018, when the court granted her attorney's motion to withdraw. (*See* 2/12/18 Order (Dkt. # 20).) Thus, Ms. Sam now appears before the court *pro se*. On April 9, 2018, Defendants filed the present motion for summary judgment, which the court now considers.[4] (*See* MSJ.)

### III. ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving

---

[4] Ms. Sam, however, did not file a response, and thus, Defendants did not file a reply. (*See* Dkt.) Despite Ms. Sam's decision to forgo a response, the court nevertheless determines whether Defendants meet their burden of demonstrating that no genuine dispute of material fact remains for trial. *See Rodarte v. Trident Seafoods Corp.*, No. C13-1028JLR, 2014 WL 4113599, at *3 (W.D. Wash. Aug. 20, 2014).

party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine [dispute] for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Where the nonmoving party appears *pro se*, a court must consider as evidence in opposition to summary judgment all assertions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing *pro se*] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Garnica v. Wash. Dep't of Corr.*, 965 F. Supp. 2d 1250, 1264 (W.D. Wash. 2013) (internal quotation marks omitted) (quoting *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004)). If the *pro*

*se* party does not respond to the motion, that failure "'does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law.'" *Rodarte v. Trident Seafoods Corp.*, No. C13-1028JLR, 2014 WL 4113599, at *3 (W.D. Wash. Aug. 20, 2014) (quoting *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (citing Fed. R. Civ. P. 56)). Lastly, "where a defendant has met its burden of demonstrating an absence of material factual [disputes] for trial, the court cannot create a [dispute] for a plaintiff who has not submitted any countervailing evidence." *Id.*

### B. Defendants' Motion for Summary Judgment

Defendants contend that summary judgment is appropriate because Ms. Sam "executed a valid release in which she did not reserve any claims or causes of action against [Defendants]." (MSJ at 6.) Defendants argue that the release was properly executed and that the language of the release covers Ms. Sam's current claims against them. (*Id.* at 8.)

Ms. Sam, appearing *pro se*, did not oppose Defendants' motion (*see* Dkt.); however, her *pro se* status "does not alter the applicability of [the] general summary judgment rules." *Rodarte*, 2014 WL 4113599, at *3; *see also King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1995) (noting that even though district courts liberally construe pleadings in favor of *pro se* litigants, they still "must follow the same rules of procedure that govern other litigants"). Thus, the court holds Ms. Sam to the "same standards as it would any other non-moving party on a motion for summary judgment." *Rodarte*, 2014 WL 4113599, at *3. Defendants therefore carry the initial burden of showing that there are no material factual disputes and that they are entitled to judgment as a matter of law.

*See Celotex*, 477 U.S. at 322. The court, however, is not required "to create disputes where there is no contrary evidence" and may grant summary judgment in Defendants' favor should they carry their initial burden. *See Rodarte*, 2014 WL 4113599, at *3.

The court concludes that Defendants have met their burden of demonstrating that there are no genuine disputes of material fact precluding summary judgment. Ms. Sam presents no evidence to contradict the facts submitted in conjunction with Defendants' motion, and she did not raise any issues with respect to the release in her pleadings. (*See generally* Dkt.; Am. Compl.) Furthermore, neither party disputes the fact that Ms. Sam, in exchange for the 2008 Dodge Charger and $2,500.00, released "the City of Tacoma, Tacoma Police Department, its officers and employees, elected or appointed, from any and all actions, claims or damages he or she may have in any way connected with or arising out of the City's seizure, storage, and return of said property." (*See* Release 2-3.) Because there are no factual disputes remaining, this matter boils down to two questions of law: (1) whether the release was valid; and (2) whether the language unambiguously encompasses Ms. Sam's current claims. Because the court concludes the answer to both questions is yes, Defendants are entitled to judgment as a matter of law.

1. Validity of the Release

"A federal district court must apply the state law that would be applied by the state court of the state in which it sits." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). Under Washington law, courts construe the validity and enforceability of a release according to the substantive law of contracts. *See, e.g., Barton v. State, Dep't of Transp.*, 308 P.3d 597, 606 (Wash. 2013); *Del Rosario v. Del Rosario*,

97 P.3d 11, 14 (Wash. 2004); *Nationwide Mut. Fire Ins. Co. v. Watson*, 840 P.2d 851, 856 (Wash. 1992). "A release is a contract in which one party agrees to abandon or relinquish a claim, obligation or cause of action against another party." *Boyce v. West*, 862 P.2d 592, 595 (Wash. Ct. App. 1993). Washington courts strictly construe exculpatory clauses, and the parties' intentions "must be clear if the release from liability is to be enforced." *Boyce*, 862 P.2d at 595 (citing *Scott v. Pac. W. Mt. Resort*, 834 P.2d 6, 9 (Wash. 1992)). Furthermore, Washington courts generally do not "vacate properly executed releases because [the state] favors finality in private settlements." *Del Rosario*, 97 P.3d at 14; *see also Bennett v. Shinoda Floral, Inc.*, 739 P.2d 648, 653 (Wash. 1987).

In order for a release to be valid and enforceable, it must be supported by consideration. *King v. Riveland*, 886 P.2d 160, 164 (Wash. 1994) (citing *Dybdahl v. Cont'l Lumber Co.*, 233 P. 10, 11 (Wash. 1925)). "Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." *Trotzer v. Vig*, 203 P.3d 1056, 1061 (Wash Ct. App. 2009) (internal quotation marks omitted) (quoting *King v. Riveland*, 886 P.2d 160, 164 (Wash. 1994)). The adequacy of consideration "is a question of law and may be properly determined by a court on summary judgment." *Nationwide Mut. Fire Ins. Co.*, 840 P.2d at 860. "In assessing consideration, courts do not inquire into the adequacy of consideration, but employ a legal sufficiency test." *King Cty. v. Taxpayers of King Cty.*, 949 P.2d 1260, 1267 (Wash. 1997). Legal sufficiency "is concerned not with comparative value but with that which will support a promise." *Id.* (internal quotation marks omitted) (quoting *Browning v. Johnson*, 422 P.2d 314, 316 (Wash. 1967), *amended*, 430 P.2d 591 (Wash.

1967)). For example, payment in return for a settlement agreement releasing a party from liability constitutes sufficient consideration. *See Nationwide Mut. Fire Ins. Co.*, 840 P.2d at 860 ("[T]he payment of an unliquidated amount by Petitioner Nationwide to settle all claims arising from the accident in which Respondent Watson was injured constituted sufficient consideration to support the release."). Washington courts, however, will not find valid consideration where only one party makes a promise and the other party receives nothing in return. *See Trotzer*, 203 P.3d at 1061 (noting that valid consideration did not exist when one party did not promise anything in return).

Here, the release between Defendants and Ms. Sam was supported by valid consideration. (*See* Homan Aff. ¶ 8; Release.) Defendants agreed to return the 2008 Dodge Charger and $2,500.00 and cease the civil forfeiture proceedings, as consideration for Ms. Sam's agreement to forfeit her interest in the 2007 Ford Mustang and the remaining $10,280.00, and to release "any and all actions, claims or damages . . . in any way connected with or arising out of the City's seizure, storage and return of said property." (Release at 2-3; *see* MSJ 10-11.) This exchange satisfies the legal sufficiency test because each party voluntarily agreed to the terms of the release in return for an "act, forbearance, creation, modification or destruction of a legal relationship, or return promise." *Trotzer*, 203 P.3d at 1061 (internal quotation marks omitted) (quoting *Riveland*, 886 P.2d at 164).

Defendants also properly executed the release, and Ms. Sam does not present any evidence to the contrary. (*See generally* Dkt.; Am. Compl.) Washington courts favor finality in settlements, and thus, a valid release is "voidable [only] if induced by fraud,

misrepresentation[,] or overreaching[,] or if there is clear and convincing evidence of mutual mistake." *Nationwide Mut. Fire Ins. Co.*, 840 P.2d at 856. Furthermore, contract law dictates that a release is voluntarily made when a party signs "an instrument of one's own free will, knowing that one is signing the agreement." *Chadwick v. Nw. Airlines, Inc.*, 654 P.2d 1215, 1218 (Wash. Ct. App. 1982), *aff'd*, 667 P.2d 1104 (Wash. 1983). Ms. Sam does not deny that she entered into the release, contend that it was induced by fraud, misrepresentation, overreaching, or present clear and convincing evidence of mutual mistake. (*See* Dkt.; Am. Compl.) Indeed, she was represented by private counsel at the time of the stipulation to abandon the civil forfeiture proceedings, and both of them personally signed the release. (*See* MSJ at 10; Release at 3.) Because the court finds consideration and proper execution, the court concludes that the release is valid.

2. The Scope of the Release

Having determined that the release is valid, the court addresses whether the release covers Ms. Sam's claims. In determining the scope of a release, Washington courts utilize the objective manifestation theory of contracts, which requires the court to "determine the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent of the parties." *Condon v. Condon*, 298 P.3d 86, 92 (Wash. 2013) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005)). Thus, when interpreting a contract, Washington courts disregard "the subjective intent of the parties if the intent can be determined from the actual words used." *Hearst Commc'ns, Inc.*, 115 P.3d at 267; *see also City of Everett v. Estate of Sumstad*, 631 P.2d 366, 367 (Wash. 1981). Parties to a contract are bound by

its terms given "their ordinary, usual and popular meaning, unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns, Inc.*, 115 P.3d at 267; *see also Adler v. Fred Lind Manor*, 103 P.3d 773, 781 (Wash. 2004).

The language of the release unambiguously covers the four claims Ms. Sam asserts against Defendants. (*See* Am. Compl. ¶¶ 14-31.) Ms. Sam agreed to release "any and all actions, claims or damages. . . in any way connected with or arising out of the City's seizure, storage and return of said property." (Release at 2-3.) The phrase "'arising out of' is unambiguous and has a broader meaning than 'caused by' or 'resulted from.'" *Toll Bridge Auth. v. Aetna Ins. Co.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989) (citing *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 543 P.2d 645, 646-47 (Wash. Ct. App. 1975), *review denied*, 87 Wash. 2d 1003 (Wash. 1976)). "Arising out of" is "ordinarily understood to mean 'originating from', 'growing out of', or 'flowing from.'" *Id.* (citing *Avemco Ins. Co. v. Mock*, 721 P.2d 34, 35 (Wash. Ct. App. 1986)).

The release precludes Ms. Sam from bringing any claims against Defendants originating from the seizure of the property described in the forfeiture proceedings. (*See* Release at 2-3.) All four of Ms. Sam's claims stem from Defendants' "seizure, storage and return of said property." (*Id.*; *see generally* Am. Compl.) For example, Ms. Sam's first claim against the City, a § 1983 claim for failing to adequately train Officer Scripps on probable cause, arises from Officer Scripps's seizure of the property described in the release. (*See* Am. Compl. ¶¶ 14-21.) Indeed, Officer Scripps had to establish probable cause in order to secure a second seizure warrant for the Dodge Charger. (*See* Incident Rep. at 11; Dodge Seizure Warrant.)

For the same reasons, the release also bars Ms. Sam's second, third, and fourth claims. Her second claim against Officer Scripps for unreasonable seizure during the November 30, 2013, stop (*see* Am. Compl. ¶¶ 22-26) originates directly from the seizure warrant. (*See* Incident Rep. at 13; 16; Dodge Seizure Warrant.) Her third claim against the City is based on Officer Scripps's same actions, and her fourth claim—for false arrest and imprisonment—likewise, originates from the same facts. (*See* Am. Compl. ¶¶ 27-31.)

All of Officer Scripps's actions related to the November 30, 2013, stop by Kent Police arose from the seizure warrant for the Dodge Charger. (*See* Incident Rep. at 13; 16; Dodge Seizure Warrant.) Indeed, in her amended complaint, Ms. Sam acknowledges that the underlying facts for each claim arise from and are connected to Officer Scripps's actions in obtaining the seizure warrant. (*See* Am. Compl. ¶¶ 14-31.) The release, however, bars any actions connected with that seizure warrant. (*See* Release at 2-3.) Because the release between Defendants and Ms. Sam is valid and covers all four claims in this suit, the court agrees that there are no factual disputes. Thus, Defendants are entitled to judgment as a matter of law, and the court dismisses all claims against Defendants with prejudice.

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment (Dkt. # 21) and DISMISSES this case with prejudice.

Dated this 17th day of May, 2018.

JAMES L. ROBART
United States District Judge

ORDER - 14